May it please the Court, my name is Kevin Crabtree and I represent Petitioner Juan Solis Olvera. Your Honors, the panel is bound by Gonzales in this case unless it determines that there is a basis to distinguish this case or there's been intervening higher authority. Petitioner asserts that Nijuan provides a basis to find both. Today I hope to address how that case affects that demonstrates there is a circumstance specific defense to the firearms bar to cancellation of removal and also that an admission in fact is required prior to the bar being triggered. In Nijuan the Supreme Court addressed the definition of offense or felony or crime as used in the Immigration and Nationality Act and found that term is ambiguous. It sometimes refers to a generic offense defined by elements of a criminal statute, sometimes refers to the specific circumstances of an offense on a particular occasion. And in light of that, it held that a fraud committed with where the loss of the victim was $10,000 or more was defined in part by reference to the specific circumstances of the offense. That clarifies in this case that the firearms bar to cancellation of removal has a circumstance specific defense. In this case, the petitioner was convicted of having discharged a firearm negligently during a New Year's celebration. And that under 18, the firearms bar to cancellation of removal incorporates by reference 18 U.S. Code section 922, which accepts antique firearms, also ones used for cultural, recreational, or sporting purpose. We assert that the petitioner's conduct was in fact a cultural use of the firearm and that the court should grant the petitioner remand to the agency to allow the petitioner to establish under the reasoning of Nijuan that the bar does not apply as a factual matter. This is supported by the agency's recent decision only of last week, matter of Mendez-Oriana, where it found that the antique firearms exception is in fact an offense or, excuse me, an affirmative defense that can be raised within the context of the removal proceeding to the firearms basis of removal. And where does the cultural exception come from? The cultural exception is found at 18 U.S. Code section 922A4. Your Honor, there is a split of authority as to whether that applies only to the destructive device exception or to the definition or firearms definition, but the Seventh Circuit held that because the firearms definition incorporates a destructive device that it would And what exactly does that language say? It says that a rifle that is used by the owner or intended to be used by the owner purely for a sporting, recreational, or cultural purpose does not fall within the definition of a destructive device. And the Seventh Circuit in a decision which I cited in my 28-J letter But you're talking about using a, you're talking about possessing a gun, right, for cultural purposes. That's correct. We're talking about firing a weapon. We're talking about firing something. And the firing itself, not the possession, was what was cultural. The statute says using, well, the removal ground says using, possessing a variety of different acts which may trigger the bar, a firearm or destructive device. And then the 18 U.S. Code is where the exception is. So the exception is to the actual definition of a firearm or a destructive device. That's what it said issue. And the Seventh Circuit found that that did apply, but ultimately found that discharging it during a New Year celebration is not an American cultural use. Let me ask you procedurally. I'm trying to figure out where we are. Your argument this morning is based on a decision that is in your 28-J letter? That's correct, Your Honor. A BIA decision? Well, it's both the Supreme Court's decision in Nijiwan and also the intervening board decision. And we're arguing that it was not raised before the board, Your Honor. I also did want to point out that Nijiwan also affects this case in another way. The Gonzales panel interpreted the phrase convicted of an offense under Section 237A2 or A3 of the Immigration and Nationality Act. 237A2 references crimes and firearms offenses. The Nijiwan – the Gonzales panel's reasoning is undermined by Nijiwan, and this Court should revisit that panel decision. As it has afforded you under Miller v. Gammey, because there's this higher authority, the Gonzales court found that – noted that a person cannot be convicted of an offense under the Immigration and Nationality Act. Well, what kind of – does the record show what kind of weapon this was? It does not, Your Honor. There is no reference at all to what kind of weapon it is. There's a very limited record of conviction in this case. I believe it's just a minute order, and that's the only thing. In fact, it's only a rap sheet, I believe. So it's a weapon that was fired on New Year's Eve. That's correct. I mean, that was the – okay. And the exception appears to be for the – as Judge Biden was asking, seems to be with respect to the nature of the weapon, not so much the use to which it was put, which was clearly – it was fired. Well, the statute is written in kind of a weird way, but ultimately the definition of firearm is – under the statute makes reference to a use or the way that it's used. So there is kind of a weird way of – Congress expressed its intent in a weird way, but I think it is clear and the Seventh Circuit so held that if a weapon is used for a cultural purpose or a recreational sporting purpose, that it would implicate this exception under the INA. However, it found that that was not a cultural use. This Court has not ruled on whether discharging a firearm to celebrate a holiday would be a cultural use. We submit that it is. People get killed when that happens. I mean, it's not a good thing to do. I agree. It's not something that we have written in our laws that say it's okay for everybody to get out and fire a weapon. I agree, Your Honor. However, the inherent – The custom is to make noise, not to fire guns in the air and populate the air. This Court has found in a case in Valerio Ochoa that the legislature of California was attempting to discourage such uses, and I would submit that there's no inconsistency between an act being criminalized and there being a cultural application of it. If I could just – Counsel, I do want to ask you. You didn't raise this cultural defense at any time in the court. It was not raised before the agency, except to the extent that the custom – What allows you to raise it now? There's been a change in law, a clarification of law, in that the offense is now defined by a circumstance-specific inquiry under Nijhuan. But Nijhuan didn't deal with – that's a tax case. Nijhuan dealt with – was not an immigration case, and it dealt with the definition of offense as used in the act, and so – Right, but it was a tax case. It didn't deal at all with weapons. So you were – this is a very creative argument. You could have made this creative argument to the BIA. It was raised before the IJ that the circumstances of the offense and the agency had the opportunity to address the definition. Did anybody cite 922 at any time? That was not raised. That issue was not raised. But if I could also just say that the Gonzales panel decision is undermined by Nijhuan in another way because the – Gonzales panel assumed that an offense – noted that a person cannot be convicted of an offense under the INA because it's not a criminal statute, of course. And it therefore held the only reasonable interpretation of the phrase convicted of an offense under 237A2 is convicted of an offense as described under 237A2, but it applied a generic definition of offense and didn't consider the possibility of a circumstance-specific application. We submit that the circumstances of having sought and acquired admission to the United States are part of the offense as used in that section and that an admission is required prior to a finding that the bar applies. And I reserve the balance of my time. Thank you. Good morning. May it please the Court. My name is Carrie Monaco, and I represent the Respondent, Attorney General Eric Holder, in this matter. This case involves the application of this Court's precedential decision in Gonzales-Gonzales v. Ashcroft, which held that an inadmissible alien, such as Petitioner, is ineligible for cancellation of removal if he has been convicted of an offense described under the deportability provisions of the Immigration Act. There is no dispute in this case that the Petitioner has been convicted under California Penal Code Section 246.3 for willful discharge of a firearm, and there's also no dispute that Gonzales-Gonzales is on point in this case and that it bars Petitioner from cancellation of removal. Petitioner argues, however, that Gonzales-Gonzales should be overturned, but these arguments are without merit. As the Court already stated in Gonzales-Gonzales, the statutory language contained in the cancellation of removal provision of the INA is clear and unambiguous. The statute is very clear that it is irrelevant whether the alien is inadmissible or deportable when determining whether a criminal conviction bars the alien from cancellation of removal. In this case, it's the same facts as Gonzales-Gonzales where the alien has been deemed inadmissible to the United States but found ineligible for cancellation based on a conviction under the deportability provisions. As the Court has already found, that language is unambiguous and very clear, and the Petitioner's proposed reading of this language requires an extensive altering of the meaning of the cancellation of removal section. Specifically, he's looking to define cancellation of removal criminal bar as only crimes under the inadmissibility provision would apply to inadmissible aliens and only crimes under the deportability provisions would apply to deportable aliens, which is an over-reading of the statute. There is also no indication that the cancellation of removal statute is in violation of any international treaties. As this Court has already found, there's no binding international law that alters the cancellation of removal requirements. Counsel for Solis Oliveira has made an argument under 922. What relationship does 922 bear to this statute? Title 18, section 921A is referenced in the deportability provisions, the firearms section under which the Petitioner was found ineligible for cancellation. I'm sorry, so which provision is that? It's 8 U.S.C. 1227A2C is the section that says any alien who at any time after admission who is convicted under any law etc. etc. of using a firearm or destructive device as defined in section 921 of Title 18. And does section 921A make this not a firearm or destructive device? No. As my opposing counsel noted, the term firearm and the term destructive device are defined separately. Section 921A3 defines firearm. Based on the facts of this case and the conviction record in this case,  falls within the definition of a firearm. Destructive device contains an exception for cultural use. However, the weapon in this case falls within the firearms provision, so it is irrelevant whether or not there is an exception under the destructive device section. And then in addition to that, that whole claim is unexhausted and Nijuan is actually not relevant to this case because that definition of a firearm and destructive device has been within 8 U.S.C. 1227A2C since long before petitioner's removal proceedings. Just out of curiosity, what did Congress intend by destructive devices that had a cultural use? The language that's used is a rifle which the owner intends to use solely for sporting, recreational, or cultural purposes. I would assume that would perhaps reference hunting rifles, but as you noted, it's really about what the intended use is or what the possession of that weapon, not the actual use of that weapon. Does the cultural use exception, that's an affirmative defense? It's an affirmative defense in a case... And it refers only to rifles? Yes, yes. The specific exception for cultural use refers to rifles. To rifles only. Right, and there's no evidence in this case that there was a rifle used. So, as I was mentioning, that claim could have been raised before 18 U.S.C. 921A, that reference to that specific code has been in the INA since long before petitioner's proceedings, so there is no reason to think that Nijawan changed anything with respect to those claims. And so, just to briefly summarize, Gonzales-Gonzales is on point in this case. There's no dispute at bars, petitioner from cancellation of removal. Nijawan is not relevant, does not supersede Gonzales-Gonzales, and there's no other case to indicate that Gonzales-Gonzales should be reversed. So we urge the court to deny the petition for review, and unless the court has any further questions for me, then the government rests. Thank you. Thank you. Thank you. I did just want to point out, addressing the court's observation that shooting into the air is very dangerous, the exception only applies when somebody has been convicted of a firearms offense under State law. So it's not inconsistent to make an observation that someone might do something that's dangerous, but Congress did not intend for the harsh consequences to attach. There is an exhaustion issue in this case. We submit that because of the change in law of the agency's decision only last week, that provides an exception. This Court in Alcarez v. INS 384, Fed Third 1150 said that an intervening INS memorandum constituted a basis for waiving exhaustion. And I did also want to point out that the petitioner asserts that one of the provisions of the International Covenant on Civil and Political Rights prohibits arbitrary interference with family, and the result in this case is very disproportionate to the harm caused by the petitioner. He was sentenced to two days in jail, and this Court recently held in U.S. v. Coronado that the mens rea element for this statute of conviction is only gross negligence. So thank you very much. Thank you. The matter just argued is submitted for decision.
judges: Stotler, Schroeder, Bybee